UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

HAROLD V. SULLIVAN, II,                          Bk. Ct. No. 05-30713-A-13

       Debtor.
_____/

HAROLD V. SULLIVAN, II,
                                         NO. CIV. S-06-20 LKK
       Appellant,

  v.                                              O R D E R

JAVA OIL LIMITED; and
BRIGHTSIDE SERVICES LIMITED,

       Appellees.
_____/

    Pending before the court is Harold Sullivan II's ("debtor" or "Sullivan") appeal of the bankruptcy court's dismissal of his Chapter 13 bankruptcy petition and its retroactive annulment of an automatic stay sought by Java Oil Limited and Brightside Services

////

////

1

Limited("Java" or "creditors").[1]

# I.

# BACKGROUND[2]

**A. THE GIBRALTAR PROCEEDINGS**[3]

On October 22, 2003, Peter Laycock ("Laycock") brought suit against creditors for personal injuries in the Courts of Gibraltar. That suit was dismissed because the Gibraltar court concluded that Laycock's complaint was fraudulent.[4] ER at 277. Creditors then brought suit in Gibraltar against Sullivan, who the court concluded acted as Laycock's attorney, to collect the costs of defending the lawsuit because he "had a hand in the preparation of the witness statements," among other things. Id. Sullivan challenged the court's jurisdiction, but that challenge was dismissed on February 17, 2005. The court then scheduled a hearing relative to the suit

---

[1] See 11 U.S.C. § 362(a). The automatic stay protects the bankruptcy debtor from all collection efforts "while they attempt to regain their financial footing." In Re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).

[2] All facts are derived from the parties' papers and from the Excerpts of Record ("ER").

[3] Gibraltar is an Overseas Territory of the United Kingdom. It is located on the southern part of the Iberian Peninsula at the Strait of Gibraltar that links the Atlantic Ocean and Mediterranean Sea, placing it between Europe and Africa.

[4] The details of the suit brought by Laycock are not directly at issue in this appeal. Suffice it to say that Laycock alleged that he suffered a blow to the head as a gate surrounding a construction site was being opened. ER at 269. Laycock maintained that the site was occupied by creditors and that he had suffered severe injuries which rendered him unable to carry on his business activities, including running a Mexican recycling plant. Id. at 270. His schedule of special damages came to just short of £ 2 million. Id.

brought against Sullivan for September 5, 2005.  Id. at 277.

On August 31, 2005, five days before the hearing was to commence in Gibraltar, debtor filed for Chapter 13 bankruptcy in the Eastern District of California.  Debtor filed a "face-sheet" petition in the Bankruptcy Court, the bare minimum necessary to commence a bankruptcy case.  ER 147-151.  Because of debtor's bankruptcy petition, the automatic stay provision of 11 U.S.C. § 362(a) was triggered and, as a result, any action on the pending suit in Gibraltar would be void as a violation of the stay.

The Gibraltar court conducted hearings on September 5 and 6, 2005.  Sullivan did not attend the hearings.[5]  At the end of the hearings, the Gibraltar court concluded that debtor had participated in Laycock's suit in bad faith, and had submitted forged documents and false evidence to the court.  ER at 278, 291-292.  Sullivan was found liable to creditors for the cost of defending the fraudulent lawsuit, an amount valued at more than $1 million U.S. dollars.  The Gibraltar court ordered Sullivan to pay the costs on an indemnity basis.  ER at 278.  On September 7, 2005, creditors filed an application requesting that Sullivan's assets

---

[5] The Gibraltar Supreme Court noted that it became aware of the bankruptcy filing "in the week proceeding the September 5, 2005 hearing."  It stated, however, that Sullivan had notified the court that the filing "has the effect of operating as a stay of all existing actions against Mr. Sullivan."  ER at 278.  Nevertheless, the court proceeded to hear the case because it was "probable that Mr. Sullivan filed for bankruptcy given the effects of the proceedings in this claim."  Id.  The court also stated that it was surprised Sullivan had filed for bankruptcy because at the June 16, 2005 case management conference Sullivan represented that "he had had a good previous year in practice."  Id.

1  be frozen.  The application was granted and the order was served
2  on Sullivan on October 6, 2005, along with an additional
3  application seeking sequestration of assets purportedly belonging
4  to Sullivan and located in the Cayman islands.  ER at 320.

**B.   CHAPTER 13 PROCEEDINGS**

On October 6, 2005, debtor completed his schedules and filed them with the bankruptcy court. ER at 11-32.  Creditors then filed a motion to dismiss or convert the bankruptcy petition and to retroactively annul the automatic stay.  Judge McManus granted the motions on November 28, 2005, dismissing the petition and annulling the automatic stay.

**II.**

**STANDARDS**

This court has jurisdiction to review proceedings of the bankruptcy court pursuant to 28 U.S.C. § 158.  The district court reviews de novo a bankruptcy court's conclusions of law.  Matter of Lockard, 884 F.2d 1171, 1174 (9th Cir. 1989).  Findings of fact by the bankruptcy judge should not be disturbed unless they are clearly erroneous.  Fed. R. Bank. P. 8013; see In re Perez, 30 F.3d 1209, 1212 (9th Cir. 1994).  That court's determination of good faith is a finding of fact reviewable for clear error.  Smyrnos v. Padilla (In re Padilla), 213 B.R. 349, 352 (9th Cir. BAP 1997).

Matters addressed to the discretion of the bankruptcy judge are reviewed for abuse of discretion.  Universal Life Church, Inc. v. United States, 191 B.R. 433 (E.D. Cal. 1999)(Wanger, J.)(citing In re Wymer, 5 Bankr. 802, 807 (9th Cir. BAP 1980)).  Among such

4

matters are review of orders of dismissal, <u>Sievers v. Green </u>(In re Green), 64 B.R. 530 (9th Cir. BAP 1986), and to retroactively annul an automatic stay.  <u>In re National Envtl. Waste Corp.</u>, 129 F.3d 1052, 1054 (9th Cir. 1997).

A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact.  <u>United States v. Peninsula Communications, Inc.</u>, 287 F.3d 832, 839 (9th Cir. 2002); <u>Gonzales v. Gottlieb (In re Metro Fulfillment, Inc. U)</u>, 294 B.R. 306, 309 (9th Cir. BAP 2003).

### III.

### ANALYSIS

In this appeal, I examine whether the bankruptcy court abused its discretion in granting creditor's motions to dismiss Sullivan's Chapter 13 petition and to annul the retroactive stay.[6] Below, I explain why the bankruptcy court did not abuse its discretion and why I must affirm the bankruptcy court's orders.

////

////

---

[6] Creditors contend that the appeal is moot since Sullivan filed no stay pending appeal, pursuant to Fed. R. Bankr. P. 8005. The argument is unavailing.  While filing a stay pending appeal is good practice, it is not a requirement, and failure to do so merely permits the prevailing party to treat the bankruptcy court's judgment as final.  "[A]n appeal is not moot if the court can fashion some form of meaningful relief." <u>In re Cascade Rds., Inc.</u>, 34 F.3d 756, 759 (9th Cir. 1994)(quotations omitted).  Here, the court can grant meaningful relief if it reversed the bankruptcy court's decision and ruled the Gibraltar judgment void for violating the stay.

**A.   DISMISSAL OF THE BANKRUPTCY PETITION**

Sullivan contends that he met the eligibility criteria and thus the Bankruptcy Court erred in its dismissal. Creditors respond that there were at least three bases upon which it was proper to dismiss the case. Upon review of the record, I conclude that Judge McManus carefully examined Sullivan's petition and did not err in dismissing it.

It is well-established that a bankruptcy court has the inherent power to dismiss a case if the debtor is not eligible for relief. In re Guastella, ---- B.R. ----, 2006 WL 1072050 *4 (9th Cir. BAP 2006)(citation omitted). Judge McManus found that Sullivan lacked a regular income, exceeded Chapter 13 debt limits, and filed his petition in bad faith. Where, as I explain below, there is record evidence to support those findings, there is no basis for concluding that the Bankruptcy Court abused its discretion in dismissing Sullivan's case.

   **1.   Regular Income**

First, Section 109(e) requires a Chapter 13 debtor to be an "individual with regular income."[7] Judge McManus emphasized that debtor failed to be candid concerning his income by not disclosing his spouse's income, not disclosing his 2004 and 2005 income, and misstating the nature, sources and regularity of his alleged income. ER at 324. The court explained that although Sullivan

---

[7] An individual with regular income is defined as "one whose income is sufficiently stable to make payments under a Chapter 13 plan." 11 U.S.C. § 101(24).

6

listed in his schedules that he earns $7500 in monthly gross income from his employer, he acknowledged at the first meeting that "this income is only payable if the debtor brings in sufficient business and only after overhead costs . . . are paid." Id. Judge McManus recalled that Sullivan previously conceded that "his real income will come from contingency fee cases." This court's review of the record supports the bankruptcy court's conclusion that "[t]here appears, then, nothing regular about [debtor's] income."[8] Id. On this basis alone, it was well within the bankruptcy court's discretion to dismiss Sullivan's Chapter 13 case for his inability to show that he is "one whose income is sufficiently stable to make payments under a Chapter 13 plan." See 11 U.S.C. § 101(24).

### 2. Debts Allowed Under 11 U.S.C. § 109(e)

Judge McManus additionally held that Sullivan failed to qualify for relief under Chapter 13 because his debts exceed the amount allowed under 11 U.S.C. § 109(e), which requires that a Chapter 13 debtor have less than $307,675.00 of noncontingent, liquidated, unsecured debt. The bankruptcy court explained that although Sullivan's schedules claimed $185,000 in unsecured and priority unsecured claims further examination reveals that the statements are inaccurate. As Judge McManus noted, a court typically looks to the face of the petition to determine the amount of debt owed, In re Scovis, 249 F.3d 975, 982 (9th Cir. 2001), but

---

[8] During the hearing on November 28, 2005, Judge McManus also noted that he was disturbed by Sullivan's failure to list as income "quite a few cases in process on contingency that are valued not at all." ER at 299.

7

the court is allowed to go beyond the schedules when faced with a good faith objection from creditors.  ER at 322-23.  See In re Guastella, ---- B.R. ----, 2006 WL 1072050 at *8.

Judge McManus took issue with Sullivan's failure to "list [creditor's] million dollar plus claim," especially since debtor knew that the "fees and costs are readily calculable by the court," and because "they were subject to ready determination."  ER at 323 (citation omitted).  Judge McManus relied primarily on Sullivan's omission of Creditor's Gibraltar claim to hold that Sullivan's case "exceed[s] the debt limits of section 109(e)."  ER at 323.

Sullivan maintains that the bankruptcy court erred because he had a good faith basis for listing Java's debt as disputed and of zero value.  Opening Br. at 7.  He maintains that he was "within the bounds of good faith to declare the debt disputed and of zero value" because the claim is based on a "complex tort theory" that is "at odds with the American system of justice."  Id. at 8-9.  He insists that his omission is justified because the Gibraltar judgment, "which was awarded under the English rule of redistribution of attorney's fees as litigation costs in order to chill access to courts, is antithetical to the American rule" of awarding attorneys' fees and costs.  Id. at 10-11.  In other words, Sullivan argues that because he disputes liability as to Java's claim, he was not required to list such a claim in his schedules.  The argument is without merit.

////

////

8

1    As Judge McManus noted, "[t]he fact that the debtor disputes the amount of a debt does not make it unliquidated," citing Nicholes v. Johnny Appleseed of Washington, 184 B.R. 82, 90 (9th Cir. BAP 1995). Indeed, "if the amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not render a debt unliquidated. Even if a debtor disputes the existence of liability, if the amount of the debt is calculable with certainty, then it is liquidated for the purposes of § 109(e)." In re Scovis, 249 F.3d 975, 983-984 (9th Cir. 2001)(citing In re Slack, 187 F.3d 1070, 1074-75 (9th Cir. 2001)). Thus, even if Sullivan disputed liability on creditors' claim, the amount demanded and awarded by the Gibraltar court was known by Sullivan at the time of his bankruptcy filing, and thus, he was obligated to list it on his schedules.

In sum, the bankruptcy court correctly applied the law and had the discretion to dismiss the matter because Sullivan lacked a regular income and because his debts exceed the allowable amount.[9]

////
////

---

[9] The court also appears to have dismissed the petition, in large part, because the record strongly suggested that Sullivan filed the petition in bad faith. The order stated, as to debtor's eligibility for Chapter 13 relief and the court's assessment of Sullivan's income, that "[i]f the court's conclusions are erroneous, it is because the debtor has chosen to conceal his true finances." ER at 324. I elaborate on Sullivan's bad faith in the discussion on the bankruptcy court's annulment of the stay. See infra.

**B.   ANNULMENT OF THE AUTOMATIC STAY**

Sullivan contends that Judge McManus "did something no other Judge has ever done in any published decision within the Ninth Circuit" by annulling the automatic stay and validating an otherwise void judgment when debtor relied on the stay and did not participate in the trial.  Opening Br. at 2, Repl. Br. at 1-2. Sullivan's contention cannot lie.  Again, based on the court's review of the record, Judge McManus did not abuse his discretion in annulling the automatic stay.

An automatic stay comes into effect whenever a debtor files for bankruptcy.  See 11 U.S.C. § 362(a).  It is designed to protect debtors from creditors while the debtor places his financial affairs in order.  In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).  Actions taken in violation of the stay are void and unenforceable against the debtor.  Id.  Section 362(d) of the bankruptcy code establishes the grounds for relief from the stay. The court may grant relief by, inter alia, terminating, annulling, modifying, or conditioning the stay.  Id.  Provided there is a showing of cause, a bankruptcy court is given "wide, latitude in crafting relief" from the stay pursuant to 11 U.S.C. § 362(d)(1),including the power to grant retroactive relief in the form of an annulment.  In re Schwartz, 954 F.2d at 572.  In order to enforce its judgment in Gibraltar, creditors moved to annul the automatic stay.

Sullivan asserts that retroactive annulment should only be granted in "extreme circumstances," quoting In re Shamblin, 890

F.2d 123, 126 (9th Cir. 1989), and argues that Judge McManus failed to apply a narrow test in determining whether annulment was appropriate.[10]  Judge McManus correctly acknowledged that "the standard for annulling the automatic stay has been phrased differently by various courts," ER at 321, and that each court examines a number of factors which are "guided by the particular circumstances of each case."  Id.  While Sullivan is correct in arguing that the Ninth Circuit has, in the past, utilized restrictive language when deciding whether to annul a stay, see, e.g., Aheong v. Mellon Mortg. Co., 276 B.R. 233, 250 (9th Cir. BAP 2002)(utilized "extreme circumstances language to affirm a stay of annulment); Phoenix Bond & Indemn. Co. v. Shamblin, 890 F.2d 123, 126 (9th Cir. 1989)(same)), ultimately, the court applied a balancing test to determine whether annulment is equitable and concluded that no one fact or circumstance determines the result. ER at 321.  See Nat'l Envtl. Waste Corp., 129 F.3d at 1055.[11]

---

[10]  Sullivan cites a number of cases from the First Circuit where the court concluded that retroactive annulment should only be granted in "extreme circumstances."  While these cases are not binding on this court, I note that they all hold that a debtor's bad faith constitutes a sufficient reason for granting retroactive annulment.  See In re Bright, 338 B.R. 530, 535 (1st Cir. BAP 2006) ("In deciding whether to retroactively annul the automatic stay, bankruptcy courts are especially concerned with allegations of bad faith."); In re Soares, 107 F.3d 969, 977 (1st Cir. 1997)("debtors who act in bad faith may create situations that are ripe for retroactive relief").

[11]  As the BAP recognized in In re Fjeldsted, 293 B.R. 12, 23 (9th Cir. BAP 2003), although the Ninth Circuit has utilized the words "extreme circumstances," "the circumstances described in both cases were not "extraordinary," and that to the contrary, the courts "simply balanced the equities, including prejudice to both sides, the inequitable conduct of [debtor], the lack of blame on

11

1     Judge McManus did not abuse his discretion in weighing the
2 equities in favor of creditors.  The bankruptcy court evaluated the
3 particular facts of the case and balanced the equities in light of
4 such facts.  See, e.g., In re National Environmental Waste, 129
5 F.3d 1052, 1055-56 (9th Cir. 1997).  In annulling the automatic
6 stay, Judge McManus found that: (1) Sullivan engaged in bad faith
7 by submitting untimely, incomplete and inaccurate schedules,
8 masking his ineligibility for Chapter 13 relief, ER at 322-23;[12]
9 (2) that the proceedings against debtor had been scheduled for many
10 months prior to the bankruptcy proceeding and were to take place
11 in another jurisdiction and that judicial economy militated having
12 the Gibraltar court resolve the case as it would impact debtor's
13 eligibility for Chapter 13 relief, ER at 321;[13] and (3) that
14 creditors were aware of the pending bankruptcy case before
15 ////

---

the part of the creditors, and the inconvenience to the courts and parties by not granting such practical relief."

[12] When a debtor files for bankruptcy in bad faith, a modification of the stay - including annulment - may be appropriate.  See, e.g., In re Kissinger, 72 F.3d 107, 109 (9th Cir. 1995)(affirming annulment when debtor filed for bankruptcy in bad faith during two day recess in trial); In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)("debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay").

[13] Judicial economy has consistently been found to be sufficient grounds for annulling a stay.  See, e.g., In re Bequelin, 220 B.R. 94, 98 (9th Cir. BAP 1998)("stay may be lifted as a matter of judicial economy"); In re Santa Clara County Fair Ass'n Inc., 180 B.R. 564, (9th Cir. BAP 1995)(affirming modification of stay to allow suit against debtor for discrimination on grounds of judicial economy).

proceeding in bankruptcy court.[14]  Based on these factors, the court determined that the equities weighed in favor of creditors. Based on the bankruptcy court's careful consideration of the facts and its correct application of the law, I conclude that the bankruptcy court did not abuse its discretion in granting creditors' motion for annulment of the automatic stay.

**IV.**

**CONCLUSION**

The bankruptcy court's dismissal of debtor's bankruptcy petition and its annulment of the automatic stay are AFFIRMED.

IT IS SO ORDERED.

DATED:  June 20, 2006

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[14] While a creditor's knowledge of a stay is a factor to be considered, it is not dispositive and in balancing the equities, other factors can warrant retroactive annulment. In re National Envt'l Waste Corp., 129 F.3d at 1055 (affirming annulment despite non-debtor's knowledge of bankruptcy). Judge McManus acknowledged that creditors were aware of the stay when they proceeded in the trial against Sullivan in Gibraltar, and that this factor favored Sullivan, but he correctly ruled that the equities favored annulment because of debtor's bad faith and judicial economy concerns.  Judge McManus explained that he did not characterize creditors' proceeding against Sullivan in Gibraltar despite knowledge of the bankruptcy filing as "unclean hands."  He explained that creditors were faced with what to do once Sullivan filed for bankruptcy "in bad faith."  ER at 304.  He stressed that Sullivan is an attorney and "chose to litigate in a foreign forum" and that numerous witnesses were "being flown from foreign countries to testify" and that logistics did not appear to be "a simple thing."  Id. at 306.

13